UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHAILA LEWIS ,

                    Plaintiff,

        v.

DG STRATEGIC VII, LLC, d/b/a
DOLLAR GENERAL ,

                    Defendant.

CASE NO. 3:25-cv-06125-BAT

**ORDER GRANTING MOTION TO COMPEL ARBITRATION, DISMISS CLASS ACTION ALLEGATIONS AND STAY CASE, DKT. 5**

On November 19, 2025, Plaintiff filed a putative class action complaint in the Thurston County Superior Court for the State of Washington against Defendant DG Strategic VII, LLC, d/b/a Dollar General ("Dollar General") challenging Dollar General's policies and practice prohibiting its hourly Washington workers from working a second job or moonlighting. Dkt. 1, Exhibit 1.

Dollar General removed the case, Dkt. 2, and now moves the Court to compel arbitration, stay the case under 9 U.S.C. § 3 until arbitration is completed, and dismiss Plaintiff's class action claims. Dkt. 5. For the reasons below, the Court **GRANTS** Dollar General's motion.

Under the Federal Arbitration Act (FAA), a contractual arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Because the FAA requires the Court to order the

ORDER GRANTING MOTION TO COMPEL
ARBITRATION, DISMISS CLASS ACTION
ALLEGATIONS AND STAY CASE, DKT. 5 - 1

parties to proceed to arbitration on issues as to which an arbitration agreement has been signed, the FAA limits the Court's involvement to determining (1) whether a valid agreement to arbitrate exists and, if so, (2) whether the agreement encompasses the dispute at issue. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)). If these two requirements are met, a federal court generally must compel arbitration. *See Farrow v. Fujitsu Am., Inc.*, 37 F. Supp. 3d 1115, 1119 (N.D. Cal. 2014). However, arbitration clauses "may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010).

### A.    Legal Standard

Defendant as the moving party bears the burden to show the arbitration agreement exists and Plaintiff is bound by its terms. *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 963 n.9 (9th Cir. 2007) ("The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.").

Once Dollar General meets this initial burden, Plaintiff bears the burden to show the arbitration agreement is inapplicable. *Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council*, 940 F.2d 513, 518 (9th Cir. 1991). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. 1, 24–25 (1983).

ORDER GRANTING MOTION TO COMPEL
ARBITRATION, DISMISS CLASS ACTION
ALLEGATIONS AND STAY CASE, DKT. 5 - 2

**B.    Background**

Plaintiff does not dispute the document Dollar General submitted at Dkt. 5 is the agreement she signed. *See* Dkt. 10 at 9 (Plaintiff states "Dollar General required Ms. Lewis to execute an arbitration agreement."). Pertinent excerpts of the agreement follow.

> Dollar General Employee Arbitration Agreement

> Please read this entire document carefully. This is an important document that concerns legal rights, so please take your time and consult with an attorney if necessary.

> . . . **Class and Collective Action Waiver**: You and Dollar General may not assert any class action, collective action, or representative action claims in any arbitration pursuant to this Agreement or in any other forum.

> . . . This Agreement is governed by the Federal Arbitration Act.

> . . . You expressly waive your right to file a lawsuit in court against Dollar General asserting any Covered Claims. You also waive your right to a jury trial. Dollar General waives its right to file a lawsuit for any Covered Claims it may have against you, and Dollar General waives its right to a jury trial.

> . . . If any parts of this Agreement are found to be invalid, illegal, or unenforceable, the validity, legality, and/or enforceability of the remaining provisions will not be affected by that decision, and any invalid, illegal or unenforceable provisions shall be modified or stricken.

> . . . Opt out: You have the opportunity to opt out of this Agreement, meaning that you will not be bound by its terms. If you opt out, Dollar General will not be bound by the terms        of        this Agreement either. To opt out, you must expressly notify Dollar General of your intention to opt out by filling out and submitting electronically the "Arbitration Opt Out Form" linked on DGme, Dollar General's employee self-service portal, within 30 days of the start of your employment with Dollar General."

Dkt. 5, Exhibit 2 at 2–3. Plaintiff's typed name appears at the bottom of the agreement, followed by two boxes. The first box states:

ORDER GRANTING MOTION TO COMPEL
ARBITRATION, DISMISS CLASS ACTION
ALLEGATIONS AND STAY CASE, DKT. 5 - 3

> I agree to the terms of the Agreement. I understand and acknowledge that by checking this box, both Dollar General and I will be bound by the terms of this Agreement."

*Id.* at 3. The second box states:

> I would like to take up to 30 days after the start of my employment with Dollar General to review and consider this Agreement. I understand that if I do not expressly opt out within 30 days of the start of my employment using the process described above, I will be bound by the terms of this Agreement and that Dollar General will also be bound by the terms of this Agreement.

*Id.* Plaintiff checked the first box and affixed her initials to the last line of the agreement, which states: "By initialing the box below, I certify that the above information is true and correct, and I agree to the conditions of hiring."

### C.    Section 1 Exemption

Plaintiff does not dispute the arbitration agreement exists, she signed the agreement and did not opt out, and the agreement encompasses the dispute. She opposes the motion to compel arbitration, first arguing the FAA exempts employment contracts of transportation workers engaged in interstate commerce. The FAA states: "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. "As the party opposing arbitration, plaintiffs bear the burden of establishing that the [§ 1] exemption applies." *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024); *see also Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152, 1161 (9th Cir.), *cert. denied*, 145 S. Ct. 165 (2024) (defining the class of workers by reference to the plaintiff's job description).

Plaintiff argues § 1 of the FAA applies because of the nature of the work she performed; "some proposed Class Members' sole jobs are to transport, load and unload goods as part of

ORDER GRANTING MOTION TO COMPEL
ARBITRATION, DISMISS CLASS ACTION
ALLEGATIONS AND STAY CASE, DKT. 5 - 4

Dollar General's fleet of trucks, occasionally across state lines"; and Dollar General is "in the transportation industry for purposes of the FAA." Dkt. 10 at 12.

The applicability of § 1's exemption is an issue for courts, not arbitrators. *New Prime Inc. v. Oliveira*, 586 U.S. 105, 111 (2019) ("[A] court should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration."). A transportation worker need not work in the transportation industry to fall under the § 1 exemption. *See Bissonnette v. LePage Bakeries Park* St., LLC, 601 U.S. 246, 256 (2024).

Rather, to determine if the § 1 exemption applies to a specific class of workers, the Court must define the relevant "class of workers" to which Plaintiff belongs. *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 455–56 (2022). This requires the Court to evaluate "the actual work that the members of the class, as a whole, typically carry out . . . not what [the employer] does generally." *Id*. In *Southwest Airlines Co. v. Saxson,* the Court addressed whether Saxson, a ramp supervisor who loaded and unloaded baggage, mail and cargo on and off Southwest's planes that traveled across the country, "belongs to a 'class of workers engaged in foreign or interstate commerce' that is exempt from the [Federal Arbitration] Act's coverage. *Id.* at 453. The Court held "[w]e think it equally plain that airline employees who physically load and unload cargo on and off planes traveling in interstate commerce are, as a practical matter, part of the interstate transportation of goods. They form "a class of workers engaged in foreign or interstate commerce." *Id.* at 457.

The Court next must determine whether the class of workers to which Plaintiff belongs is "directly involved in transporting goods across state or international borders." *Id.* To be "directly involved" in interstate commerce and fall within the § 1 exemption, the class of workers "'must at least play a direct and necessary role in the free flow of goods across borders.'" *Bisonnette v.*

ORDER GRANTING MOTION TO COMPEL
ARBITRATION, DISMISS CLASS ACTION
ALLEGATIONS AND STAY CASE, DKT. 5 - 5

*Lepage Bakeries Park St. LLC,* 601 U.S. at 246 at 256 (internal quotation marks omitted). In *Saxson*, the Court held "[c]argo loaders exhibit this central feature of a transportation worker. As stated above, one who loads cargo on a plane bound for interstate transit is intimately involved with the commerce (e.g., transportation) of that cargo." *Saxson*, 596 U.S. 450 at 458.

In opposing the motion to compel arbitration, Plaintiff asserts she is an exempt transportation worker. However, Plaintiff does not show that she or the members of her putative class action perform the actual work of a transportation worker. Plaintiff contends "**some** proposed Class Members' sole jobs are to transport, load, and unload goods as part of Dollar General's fleet of trucks, occasionally across state lines." Dkt. 10 at 12. Even assuming this is accurate, Plaintiff does not show most members of the putative class "typically" carry out these activities, that Plaintiff herself performs these activities, or that Plaintiff's "actual work" plays "a direct and necessary role in the free flow of goods across borders."

Dollar General submitted a declaration stating that Dollar Store employees such as Plaintiff are prohibited from (1) entering delivery trucks; (2) going within 20 feet of the delivery trucks; (3) unloading delivery trucks or (4) bringing delivered goods into the store. Dkt. 19 (Wettgen declaration). Additionally, while the Dollar General job description posting for Plaintiff's job states the employee will "unload" a truck, Mr. Wettgen declares this "refers to retail store employees unloading merchandise onto store shelves . . . that was previously delivered by drivers who initially delivered the merchandise into the store from their truck trailers." *Id.* Mr. Wettgen declares Plaintiff has never been worked for Dollar General as a fleet delivery driver or as a distribution center employee. *Id.*

Additionally, Dollar General submitted a declaration averring there are 47 Dollar General Stores in Washington State, six stores receive inventory delivered by "fleet drivers"; Plaintiff did

not work at any of these six stores; and all other stores receive inventory delivered by a third party. Dkt. 20. Thus, it appears most delivery drivers that Plaintiff includes in her putative class action are not employees of Dollar General and would be outside the putative class.

Thus, some Dollar General employees are engaged in actual work that directly involves transporting goods across state or international borders; most Dollar General employees are not involved in such work; and there is nothing showing Plaintiff is engaged in the transport of goods across state lines.

That some Dollar General employees transport goods in interstate commerce does make all employees transportation workers as Plaintiff argues. In support of this argument, Plaintiff cites *Lenz v. Yellow Transp., Inc*., 431 F.3d 348, 351–52 (8th Cir. 2005). However, this case held a customer service representative for a transportation carrier was **not** engaged in interstate commerce because he "never directly transported goods in interstate commerce," "had no direct responsibility for transporting goods in interstate commerce," "never handled any of the packages that [the carrier] delivered," and "did not directly supervise the drivers in interstate commerce." *Id*. at 352–53. Thus, *Lenz* differentiates between which employees are transportation workers under § 1 and which are not; Plaintiff falls into the category of workers who are not.

Plaintiff also argues the § 1 exemption applies under *Ortiz v. Ranstad Inhouse Services, LLC*., 95 F.4th 1152 (9th Cir. 2024). *Ortiz* involved warehouse workers who were actively engaged and intimately involved with' transportation because their actual work, involved processing and storing goods in order to ready them for interstate shipment. In contrast, Plaintiff does not show her actual work similarly involved processing or storing goods in preparation for interstate shipment.

ORDER GRANTING MOTION TO COMPEL
ARBITRATION, DISMISS CLASS ACTION
ALLEGATIONS AND STAY CASE, DKT. 5 - 7

Plaintiff further cites *Rittman v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020). In this case, the Court of Appeals found one of Amazon's goals was to provide its "customers with an incredible delivery service through the last mile of the order" and the Plaintiff delivery providers are exempt § 1 transportation workers because they delivered goods that "remain in interstate commerce until they are delivered." *Id.* 915. The *Rittman* court recognized that unlike the plaintiffs in *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), where poultry shipped from out of state "came to rest" when they reached slaughterhouses, "Amazon packages do not 'come to rest' at Amazon warehouses, and thus the interstate transactions do not end at those warehouses. *Rittman*, 971 F.3d 904 at 916.

Following *Rittman*, the Court of Appeals again affirmed a delivery worker is exempt under § 1 if the worker "operate[s] in a single, unbroken stream of interstate commerce that renders interstate commerce a central part of their job description." *Carmona Mendoza v. Domino's Pizza, LLC.*, 743 F.4th 1135 (9th Cir. 2023); *see also Lopez v. Thyssenkrupp Supply Chain Services NA, Inc.* 2025 WL 2427620 at * 1 (9th Cir., Aug. 22, 2025) (plaintiff who moved auto parts through a warehouse to facilitate their continued travel through an interstate supply chain was an exempt transportation worker under § 1 of the FAA). Plaintiff does not show her actual work similarly involved facilitating the transport or temporary storage of goods in an unbroken interstate supply chain.

Even assuming the Dollar General store at which Plaintiff worked received items from another state, the *Rittman* decision notes: "Courts have determined that workers do not fall within the scope of § 1's exemption when their job duties are 'only tangentially related to [the] movement of goods.'" *Rittman v. Amazon*, 917 F.3d 904 at 911. Thus, the fact Dollar General

sold items that were transported to the store from another state is insufficient to establish Plaintiff is a transportation worker under § 1 of the FAA.

Lastly Plaintiff argues she is exempt from arbitration because Dollar General "is in the transportation business for purposes of the FAA." Dkt. 10 at 13-14. A similar argument was raised in *Southwest Airlines v. Saxson*. There, Saxson contended an exempt transportation worker includes "all airline employees" because an airline is in the transportation business. The Court rejected "Saxson's argument that § 1 exempts virtually all employees of major transportation providers" as overbroad because it would include employees such as Southwest's website designer, who are not transportation workers. *Southwest Airlines Co. v. Saxon*, 596 U.S. 450 at 459. (2022).

Plaintiff signed an arbitration agreement encompassing the claims herein, and she is not exempted from arbitration under § 1 of the FAA because she has not shown she is a transportation worker. Plaintiff also does not show the other class members she purports to represent are all or mostly transportation workers who are exempt under § 1 of the FAA.

**D.    Arbitration if FAA Inapplicable and Whether Washington Public Policy Precludes Enforcement of the Agreement**

Plaintiff argues if the FAA is inapplicable, arbitration of her claims cannot be compelled. She also contends the Court should not order arbitration because the arbitration agreement is "unenforceable" and contrary to Washington State's "public policy" "favoring employee rights, collective action, and access to justice through class adjudication of small claims." Dkt. 10 at 15. However, Plaintiff acknowledges "[i]f the FAA applied to the parties' Arbitration Agreement, Washington's public policies would yield to federal law favoring arbitration." *Id*. at 16, n.1. As the Court finds the FAA is applicable, both of Plaintiff's arguments are foreclosed.

ORDER GRANTING MOTION TO COMPEL
ARBITRATION, DISMISS CLASS ACTION
ALLEGATIONS AND STAY CASE, DKT. 5 - 9

**E. Whether the Agreement is Unconscionable**

Plaintiff contends the agreement is both procedurally and substantively unconscionable. Dkt. 10 at 18–21. Procedural unconscionability involves improper formation of a contract, and thus the Court considers the manner in which the contract was entered, whether Plaintiff had a reasonable opportunity to understand the contract, whether the contract terms are understandable, and whether the terms were hidden in fine print. *Burnett v. Pagliacci Pizza*, 196 Wash.2d 38 (2020).

Defendants submitted a copy of the arbitration agreement. The agreement's terms are plainly presented, not hidden away, and not set forth in unreadable fine print or incomprehensible language. Plaintiff argues the agreement is unconscionable because it did not allow employees to opt out "until after entering into it and beginning their employment." Dkt. 10 at 9. The agreement specified a procedure to opt out, requiring the employee to fill out and submit a separate electronic "Arbitration Opt Out Form." In other words, the form itself did not include a self-contained option to opt out.

In support of its motion, Dollar General submitted the arbitration agreement, which states it is "a <u>mutually binding</u> agreement between you and Dollar General, subject to opt out rights described at the end of the agreement." Dkt. 5, Exhibit 2. At the end of the agreement are two boxes which gave Plaintiff the choice to signify whether she agreed with terms of the agreement and agreed to be bound by those terms, or whether she requests "up to 30 days after the start of my employment with Dollar General to review and consider the Agreement." *Id.* Plaintiff elected the option to agree to be bound by the terms of the agreement and does not argue otherwise.

The Court thus finds Plaintiff had the option to signify at the time she signed the agreement that she reserved the right to opt out of the agreement. Her argument she lacked a

meaningful choice to opt out is contradicted by how the agreement allowed her, if she so elected, to opt out even after the start of her employment with Defendant, so long as she made that election within 30 days of the start of her employment. Plaintiff likens her case to *Burnett v. Pagliacchi Pizza*, but in that case the Court found "essential terms were hidden, and Burnett had no reasonable opportunity to understand the arbitration agreement before he signed it." 196 Wash.2d 38 at 57. In contrast, there is no dispute here the terms of the agreement were not hidden when Plaintiff signed it, and the agreement contains an opt out provision which Plaintiff elected not to exercise. The Court thus rejects Plaintiff's contention the agreement is unconscionable because she could not immediately opt out at the time she signed the agreement.

Plaintiff also argues the agreement is procedurally unconscionable because Dollar General staff was not present when she signed the agreement, and she could not ask Defendant's staff any questions about the agreement. However, Plaintiff bears the burden to show the agreement is not enforceable.

> At minimum, an employee who asserts an arbitration agreement is procedurally unconscionable must show some evidence that the employer refused to respond to her questions or concerns, placed undue pressure on her to sign the agreement without providing her with a reasonable opportunity to consider its terms, and/or that the terms of the agreement were set forth in such a way that an average person would not understand them.

*Zuver v. Airtouch Commc'ns, Inc.,* 153 Wash.2d 293, 306–07, 103 P.3d 753 (2004). Plaintiff makes no such showing. The Court accordingly finds the agreement is not procedurally unconscionable.

Plaintiff argues the agreement is also substantively unconscionable because it "implicitly" bars employees from asserting a class action, and thus "implicitly bars the arbitrator from considering the preclusive effect of a prior arbitration award." Dkt. 10 at 20–21. This

ORDER GRANTING MOTION TO COMPEL
ARBITRATION, DISMISS CLASS ACTION
ALLEGATIONS AND STAY CASE, DKT. 5 - 11

argument is raised only because Plaintiff seeks to bring a class action. This is evident because she does not point to any language in the agreement specifically barring the arbitrator from considering the preclusive effect of a prior arbitration award in another individual's case, to her individual case. Dollar General in fact states "there is nothing barring an arbitrator from the considering the preclusive effect of a prior arbitration award." Dkt. 19 at 3. The Court thus rejects Plaintiff's argument the agreement bars the arbitrator, in all cases, from considering the preclusive effect of a prior arbitration award and is unconscionable.

The nub of Plaintiff's unconscionability argument is because the agreement bars class actions, the agreement "facilitates Dollar General's continued unlawful practice of requiring low-income Washington residents to endlessly (and expensively) relitigate identical issues." Dkt. 10 at 21. To prevent this, this argument implies the Court should permit Plaintiff to bring a class action against Dollar General. But to do so would require the Court to strike the agreement's class action waiver provision. The Court is foreclosed from granting such relief. In *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011), the Supreme Court invalidated a California Supreme Court rule that had disallowed class or collective action claims, holding that decision was pre-empted by the FAA. *See also Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (plaintiffs' argument a class action waiver in promissory note is unconscionable under California law "is now expressly foreclosed by *Concepcion*"); *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1158 (9th Cir. 2009) (holding FAA preempts Washington state law invalidating class-action waivers as substantively unconscionable); *Larios v. Township Building Services, Inc.* 2025 WL 3172309 at * 2 (9th Cir. 2025) ("the district court erred in concluding that the arbitration agreement was substantively unconscionable because it contained a class action waiver. The FAA preempts state court decisions prohibiting class action waivers as

unconscionable."). In short, the Court finds the agreement is neither procedurally nor substantively unconscionable.

For the foregoing reasons, the Court **ORDERS**:

1. Dollar General's motion to compel arbitration, DKT. 5. is **GRANTED**.

2. Plaintiff's class claims are **DISMISSED** pursuant to the express language of the agreement in which the parties agreed to waive class or collective action claims.

2. The parties shall initiate arbitration pursuant to the terms of the agreement.

3. Pursuant to § 3 of the FAA, upon Dollar General's request for a stay, the Court **STAYS** this matter until the arbitration has concluded.

4. The parties shall jointly submit a status report as to what further action the Court should take **within 21 days** of the conclusion of the arbitration.

DATED this 3rd day of February, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER GRANTING MOTION TO COMPEL
ARBITRATION, DISMISS CLASS ACTION
ALLEGATIONS AND STAY CASE, DKT. 5 - 13